# Shearer's Appeal.

In proceedings in partition the court decreed that the party to whom the land was adjudged should enter into certain recognisances as specified in the decree. Subsequently it was discovered that there was an error in the decree as to the nature of the recognisances, and on a bill of review the Orphans' Court decreed that the surety in the recognisances should enter into a new recognisance whereby his liability differed from and was enlarged over that incurred by the original recognisances. *Held,* that the recognisance could not be thus reformed to the prejudice of the surety.

October 28th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Westmoreland county:* Of October and November Term 1880, No. 250.

David Evans died seised of a tract of about 200 acres of land and leaving a widow and eight children. One of these children, Lazarus, died intestate, leaving a widow, Mary Evans, but no issue. In May 1875 proceedings were commenced by the heirs of David Evans for the partition of the above tract of land in the Orphans' Court of Westmoreland county, and the same being found incapable of partition was awarded on November 13th 1875 to W. J. Ross, who was the husband of one of the daughters of said decedent. The court decreed that the said Ross enter into recognisance to pay Ellen Evans, widow of said decedent, the interest annually, during her natural life, on the one-third of the increased valuation, and at her death pay the said one-third to the heirs of said decedent; and also that he enter into recognisance to pay to the heirs of said decedent the remaining two-thirds of the increased valuation, in one year from said date, with interest, &c. And the court further decreed that as to the share of Lazarus, that the said Ross enter into recognisance to pay interest on one-half of his share to his mother, during her natural life, and as to the remaining half, to pay the interest during life to Mary, the widow, during her natural life, and at their respective deaths pay said share to the heirs of decedent, &c.

Ross took the land and entered into all the specified recognisances in which Hiram Shearer and Hugh Ross were sureties.

[Shearer's Appeal.]

Hugh Ross died shortly after the recognisances were given. W. J. Ross became insolvent and failed to pay the amount secured by the recognisances. Judgments were then obtained against him and Shearer by the widow for her arrears of dower, and by several of the heirs, and the tract of land was levied upon and sold. Shearer purchased it at the sheriff's sale to protect his own interest. Out of the proceeds all that was due on the recognisances was paid, including the interest due the widow of David Evans and that due the widow of Lazarus Evans. Subsequently the widow of Lazarus filed a bill of review which, after setting forth the above facts, averred, " that the said clerk further failed and neglected to require and obtain of and from said Ross a recognisance to secure to your petitioner, widow, as aforesaid, in event of her surviving Ellen Evans, mother as aforesaid, the payment, annually, during her natural life, of the one-half of one-third of the share, purpart or dividend of said Lazarus, deceased; and also to pay the said share, to wit, the one-half of the one-third, as aforesaid, at the death of your petitioner, in the event of her surviving said Ellen, as aforesaid, to the heirs of said Lazarus Evans, deceased. Wherefore your petitioner prays the court to review said decree, and order W. J. Ross, with his surety, H. Shearer, to enter into recognisances in accordance with a true calculation to be made and approved by the court, correcting the errors complained of in the bill."

An auditor, G. D. Albert, Esq., was appointed, who reported in favor of the prayer of the petition. Shearer excepted, and the court, Hunter, P. J., dismissed the exceptions and made a decree in accordance with the prayer of the petition. From this decree Shearer took this appeal.

*H. P. Laird*, for appellant.—It is assumed that the Orphans' Court had jurisdiction to compel the surviving surety in the other recognisances to also acknowledge himself indebted to the widow of Lazarus for her interest, and this without any obligation on the part of the deceased co-surety to share the responsibility. We contend there is no precedent for such a stretch of power in any court, much less in one of limited jurisdiction, such as the Orphans' Court. These sureties, after signing the one-half of the recognisances, might have refused to sign the others. And if they signed those remaining under compulsion of attachment and imprisonment, such obligation would lack one of the essential elements of a valid contract, namely, the free and voluntary consent of the party contracting.

*Hazlett* and *Edgar Cowan*, for appellees.—Shearer was one of the sureties of W. J. Ross, the heir who took the land. He is also now the terre-tenant of the land bound by the decree, and liable as

such for the valuation money as well as personally. Hugh Ross, his co-surety, being dead, his burden is thrown first, upon the land, second, upon Shearer, his co-surety who survived him, whose remedy, if he is damnified, is over against the estate of said Hugh for contribution. The decision of this court in George's Appeal, 2 Jones 260, upon the authority of the Orphans' Court to review its proceedings and correct errors and mistakes, goes much further than the court below did in this case.

Mr. Justice STERRETT delivered the opinion of the court, November 8th 1880.

The main question involved in the several assignments of error is, whether the facts were sufficient to justify the Orphans' Court in vacating the recognisance given to secure the interest of Mrs. Evans, the elder, in the real estate of her deceased husband, and in requiring appellant, as surviving surety in the recognisance, to enter into a new obligation in lieu thereof, and also to give a recognisance to secure the interest of appellee, as widow of Lazarus Evans in the share of the valuation money to which he would have been entitled if living, &c. We are clearly of opinion that they were not. The personal liability of appellant, either to the widow or any of the heirs of David Evans was measured by the recognisances to which he became a party in 1875, as one of the sureties of W. J. Ross to whom the real estate was then allotted; and the court was powerless to impose on him any obligation which he did not then or afterwards voluntarily assume. The recognisances that were given by Ross and his sureties were all that were then demanded, and, as all parties supposed, in due form. If the land, of which appellant subsequently became terre-tenant, continues bound in his hands it must be by virtue of the original decree, or the recognisances given in pursuance thereof. It appears that suit was brought on one or more of the recognisances and prosecuted to judgment and execution under which appellant purchased the land now in his possession. The effect of the sale, thus made, was to divest the liens in favor of the heirs and both of the widows, except as to the annual interest thereafter to become due and payable to each of the widows, and the principal on which that interest is payable. The testimony of appellant was that he purchased the land for the purpose of protecting himself as surviving surety in the recognisances; that the respective heirs received the full amount then due and payable to them by the terms of the recognisances, and that he paid each of the widows the arrears of interest due her in full. So far then as appellant is concerned, it is clear that he cannot be called upon to assume, against his will, any new or additional obligation, nor can the land in his possession be charged with any encumbrance that was divested by the sale. The arrears of interest, in the nature of dower, to each of the widows,

[Shearer's Appeal.]

and the amounts, past due and payable to each of the six heirs, were thus divested, and appellant, as purchaser at a judicial sale, took the land subject only to the fixed encumbrances, viz. : the interest thereafter due to the two widows, and the principal on which it is payable; and the record as it then stood must be resorted to for the purpose of determining what those encumbrances were. After the recognisances passed into judgment which was finally executed by the sale of the land on which they were a lien, it is too late to go behind all these proceedings and seek to impose additional burdens on the sureties in the recognisances or on the land in the hands of the sheriff's vendee. And, moreover, if appellant as surety paid part of the recognisance given to secure the widow's interest, he has a right to call upon the personal representatives of his co-surety for contribution, and hence he might be seriously prejudiced by the decree vacating the recognisance. The heirs also might be injuriously affected, but they are not here complaining; and it does not appear that they were made parties to the proceeding.

The errors, in the original proceeding, of which the appellee complained, are quite apparent, but they are not in any degree chargeable to appellant or his principal in the recognisances. They gave the recognisances in the form in which they were presented. If the parties who were prejudiced by the errors of the court or its clerk failed to discover them or slept on their rights until after the death of one of the sureties, the insolvency of the principal and sale of the land, by virtue of proceedings on one or more of the recognisances, it is too late to insist on such modification of the original proceedings as will impose any additional burden on the surviving surety or on the land in his possession as terretenant. But if, upon notice to all parties interested, and without prejudice to either of the sureties, the original decree can be so amended as to more clearly define and better secure the interest to which each of the widows is entitled, there is no good reason why it should not be done ; and to the end that such further proceedings may be taken in the court below, the decree should be reversed without prejudice. We see nothing in the circumstances of the case to justify the imposition of the costs or any part thereof on the appellant. .

> The decree of the Orphans' Court is reversed at the costs of the appellee, and the record is remitted for such further proceedings as may be taken in accordance with the foregoing opinion.